UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROL BANGURA<br><br>          Plaintiff,<br><br>     v.<br><br>PENNROSE MANAGEMENT COMPANY, TIFFANY HOLDEN, and STEFANY JONES<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 1:09-04017<br>(JEI)<br><br>**OPINION** |

**APPEARANCES:**

Jill Fisher, Esq.
ZARWIN, BAUM, DEVIOT, KAPLAN, SHAER & TODDY, PC
5 Greentree Centre
Suite 303
Marlton, NJ 08053
          Counsel for Plaintiff

Erin J. McLaughlin, Esq.
BUCHANAN, INERSOLL & ROONEY, PC
1 Oxford Centre
20th Floor
301 Grant Street
Pittsburgh, PA 15219
          Counsel for Defendant Tiffany Holden

M. Elizabeth Duffy, Esq.
DALY, LAMASTRA & CUNNINGHAM
3 Mountain View Road
P.O. Box 1622
Warren, NJ 07061
          Counsel for Defendant Stefany Jones

**IRENAS,** Senior District Judge:

The matter before the Court arises out of claims that Plaintiff Carol Bangura ("Bangura") has brought against Defendants Pennrose Management Company ("Pennrose"), Tiffany Holden ("Holden"), and Stefany Jones ("Jones") for violation of the Federal False Claims Act (31 U.S.C. §3730(h)) and the New Jersey Conscientious Employee Protection Act ("CEPA", N.J.S.A. §34:19-1 *et seq.*).  Defendant Pennrose's principal place of business is in Philadelphia, Pennsylvania; it operates approximately thirty properties in New Jersey.  (Compl. ¶ 5.)  Defendant Holden is an employee of Pennrose, who lives and works in Western Pennsylvania.  (Jones's Br. in Supp. of Mot. to Dismiss 1.)  She was Bangura's direct supervisor from November 2008 to May 2009.  (Bangura Cert. ¶ 4.)  Defendant Jones is also an employee of Pennrose, who lives and works in Pennsylvania.  (Jones Cert. ¶¶ 1-2.)  From July to November 2008, Bangura reported directly to Jones.  From November 2008, Jones was the Director of Supportive Services, with Holden reporting directly to her.  (Bangura Cert. ¶ 4.)

Before the Court are two motions by Defendants Holden and Jones:  a Motion to Dismiss for 12(b)(2) lack of personal jurisdiction and a Motion to Dismiss for 12(b)(6) failure to state a claim under the Federal False Claims Act for which relief may be

granted.[1]  As Plaintiff has no objection to the 12(b)(6) motion,[2] this Court addresses only the question of personal jurisdiction. Because the thrust of the motions is substantially similar, the Court addresses them together.

As Bangura has not shown that either Holden or Jones purposefully directed her activities at New Jersey such that minimum contacts is satisfied, the Motions to Dismiss for 12(b)(2) lack of personal jurisdiction are granted.

I.

Bangura was employed by Pennrose between July 2008 and May 12, 2009 as a Supportive Services Coordinator for Pennroses's Low Income Housing units first in Baltimore, Maryland, then in New Jersey.  (Compl. ¶¶ 10, 13, 28.)  Under the federal Low Income Housing Tax Credit program, Pennrose received tax credits for developing low income housing units on its Maryland and New Jersey properties.  (Compl. ¶¶ 10-11.)  Each site had money allocated for the salary of a Supportive Services Coordinator and for the

---

[1] "[A] party may assert the following defenses by motion: . . . lack of personal jurisdiction; . . . failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(2), (6).

[2] Plaintiff does not oppose Defendants' motions to dismiss Count I – Violation of Federal False Claims Act.  (Br. in Opp'n to Def. Holden's Mot. to Dismiss ("Pl. Br in Opp'n Def. Holden"), 1 n.1)(Br. in Opp'n to Def. Jones's Mot. to Dismiss ("Pl. Br. in Opp'n Def. Jones") 1 n.1.)

services provided on that property, as required by the tax credit program. (Compl. ¶¶ 12, 14.) Bangura claims that she did not receive funds that were budgeted for the sites and consistently informed Holden and Jones about the situation. (Compl. ¶ 15.)

In April 2009, at her request, Bangura was transferred from Pennroses's Maryland sites to New Jersey. (Compl. ¶ 16.) According to Bangura, while she was in New Jersey, Jones and Holden contacted her at home, on her cell phone, or through her personal email account, which she accessed on her personal computer. (Bangura Cert. ¶ 7.) After her transfer, Bangura continued to commute to Baltimore for a period of two weeks, during which time a tenant at the Orchard Ridge property in Baltimore complained that no supportive services were provided there. (Compl. ¶¶ 17-18.) Jones informed Bangura of the complaint during a phone conversation on April 21, 2009. At that time, Bangura told Jones that she believed Pennrose was committing fraud by not providing funds for supportive services. (Compl. ¶ 19.) Following this conversation, Holden informed Bangura that she would continue to work at properties in Baltimore until adequate supportive services were provided and a replacement arrived. Bangura responded by telling Jones that she believed she was made to continue working in Maryland in retaliation for reporting fraud, the lack of services, and for threatening to file a complaint. (Compl. ¶¶ 20-22.) Bangura was subsequently informed that she could begin working in

New Jersey.

As with the Maryland sites, Bangura found that there were no supportive services being provided at the New Jersey sites, which she also reported to Holden. (Compl. ¶¶ 24-25.) On May 6 or 7, Holden informed Bangura that the property manager stated that she had failed to report to the site on May 4, 2009. Bangura replied that she had reported to the site and once again mentioned her concerns about the lack of funding and services at the site. (Compl. ¶ 26.) On May 9, Bangura was asked to attend a May 12 meeting at the regional headquarters in Philadelphia. At this meeting, which was attended by Holden and Lisa Grafstrom ("Grafstrom"), Director of Human Resources, Bangura was asked to restate her accusations of fraud and retaliation as well as the details of her May 6 or 7 phone call with Holden. Bangura offered to present the details in writing, at which point Grafstrom informed her that she was being terminated for her insubordination during the phone conversation with Holden. (Compl. ¶¶ 27-28.) Bangura later received a letter from Grafstrom dated May 20, 2009, stating that she was terminated for insubordination and poor performance. (Compl. ¶ 31.)

## II.

This Court has in-personam jurisdiction to the extent authorized by the state in which the court sits. Fed. R. Civ. P.

4(k).[3]  Under the New Jersey long-arm statute, jurisdiction is extended as far as allowed by the strictures of the Due Process clause, incorporated under the Fourteenth Amendment. N.J. Ct. R. 4:4-4; *see Carteret Savings Bank, FA. v. Shushan*, 95 F.2d 141, 145 (3d Cir. 1992).  Due process requires that (1) the defendant have minimum contacts with the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), and (2) that exercising jurisdiction over the defendant "does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).  If these two conditions are met, then a court will have jurisdiction.

Personal jurisdiction may be established through either general or specific jurisdiction.  As Bangura concedes, this court does not have general jurisdiction over Holden and Jones.[4]  Thus it is only necessary to address the question of specific jurisdiction. "A 'relationship among the defendant, the forum, and the litigation' is the essential foundation" of specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

---

[3] "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."  Fed. R. Civ. P. 4(k)(1)(a).

[4] Plaintiff concedes in her opposition briefs that this Court does not have general jurisdiction of Defendants Holden and Jones.  (Pl. Br in Opp'n Def. Holden 5 n.3; Pl. Br in Opp'n Def. Jones 4 n.3.)

414 (1984) *(*quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Whether this Court has specific jurisdiction over defendants Holden and Jones requires a three-part inquiry. First, the defendant must have purposefully directed her activities towards the forum state, *Burger King*, 471 U.S. at 472 (1985), and, second, the claim at bar must arise out of or be related to those activities. *Helicopteros*, 466 U.S. at 414). Third, if these two requirements are met, then the court asks if jurisdiction would offend "notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

When a defendant's contacts with the forum state arise from contacts made in a corporate capacity, it should be noted that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . Each defendant's contacts . . . must be assessed individually." *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 781 n. 13. For example, the Third Circuit has held that Illinois residents whose only contacts with New Jersey were a result of corporate activities there were not subject to personal jurisdiction in New Jersey. *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000).

The plaintiff has the burden of showing that jurisdiction is proper when in personam jurisdiction is questioned. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). For a plaintiff to withstand a motion to dismiss for 12(b)(2) lack of

personal jurisdiction, she must present actual facts, not mere allegations, and cannot rely on the pleadings alone. *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990). When deciding a 12(b)(2) motion, a court views all allegations and facts in the light most favorable to the non-moving party. *Metcalfe v. Renaissance Marine, Inc.* 566 F.3d 324, 330 (3d Cir. 2009).

### III.

Bangura claims that Holden's and Jones's email and phone contacts with her while she was in New Jersey are sufficient to establish specific jurisdiction, as these contacts were directly related to her subsequent termination. She cites nine instances where Holden called or emailed her regarding her job responsibilities. (Bangura Cert. ¶ 8.)[5] She also indicates that Jones telephoned or emailed her at least three times for issues relating to services provided at Pennrose properties and that Jones made four work-related visits to New Jersey. (Pl. Br. in Opp'n Def. Jones 2-3, Jones Cert. ¶ 7.) These activities are insufficient to support minimum contacts.

---

[5]Bangura states that these contacts are "some, not all" of the contacts she had with Holden and Jones while living and working in New Jersey. She claims that both Defendants emailed and/or telephoned other Supportive Services Coordinators in New Jersey. Bangura also claims that Jones telephone her to discuss personal matters. (Bangura Cert. ¶¶ 8, 10-11.) However, these contacts are immaterial for the purposes of determining specific jurisdiction, as they do not relate to Bangura's termination.

Holden and Jones's contacts with New Jersey were a necessary part of their employment with Pennrose. Both Holden and Jones supervised employees in New Jersey, and, as such, were required to have contact with New Jersey for the purposes of fulfilling their professional responsibilities. However, these contacts do not demonstrate purposeful availment on their part. *Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 850 (3d Cir. 2003)(finding that two corporate officers of a Dominican corporation were not subject to personal jurisdiction in New Jersey, even though they had traveled to the state to do business for the corporation, as their actions were undertaken on behalf of the corporation not so the defendants themselves could conduct business in New Jersey). The necessity of communicating with an employee who happens to work in New Jersey cannot be said to show that the supervisors purposefully directed their activities at New Jersey. Because neither Jones nor Holden purposefully availed themselves of the privilege of conducting business in New Jersey, their activities do not satisfy minimum contacts. Accordingly, this Court does not have in personam jurisdiction over Holden or Jones, and the motion to dismiss is granted.

## IV.

For the reasons set forth above, the motions to dismiss for 12(b)(2) lack of personal jurisdiction and 12(b)(6) failure to

state an FCA claim upon which relief may be granted are granted. The Court will issue an appropriate order.


June 15 , 2010                                s/ Joseph E. Irenas

                                         **JOSEPH E. IRENAS, S.U.S.D.J.**

                                 10